MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ALEJANDRO MANUEL ZAPATA OSORIO,
ARTURO DEL RAZO, BRAULIO
ROLANDO CASHABAMBA CHANGO,
BYRON SALVADOR BARRERA
SANCHEZ, CARLOS E. SIERRA
RODRIGUEZ, EDWIN FABRICIO
CASHABAMBA TUBON, JESUS SIERRA,
JUAN SIERRA, RAMON ROSALES
GALVEZ, RAUL CHAVEZ DIAZ,
SEGUNDO LEANDRO ALULEMA
GUANO, SEGUNDO NICOLAS
SIGUENCIA ENCALADA, and WILDER
RODRIGUEZ, *individually and on behalf of*
*others similarly situated,*

                            *Plaintiffs*,

                -against-

VECTOR STRUCTURAL PRESERVATION
CORP.  (D/B/A VECTOR STRUCTURAL
PRESERVATION), NORTH STAR
STRATEGY, INC.  (D/B/A NORTH STAR
STRATEGY), BILL HANDAKAS,
VASSILIOS HANDAKAS, and SERGIO
DOE,

                            *Defendants.*
-------------------------------------------------------X

**COMPLAINT**


**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

      Plaintiffs Alejandro Manuel Zapata Osorio, Arturo del Razo, Braulio Rolando Cashabamba

Chango, Byron Salvador Barrera Sanchez, Carlos E. Sierra Rodriguez, Edwin Fabricio

Cashabamba Tubon, Jesus Sierra, Juan Sierra, Ramon Rosales Galvez, Raul Chavez Diaz,

Segundo Leandro Alulema Guano, Segundo Nicolas Siguencia Encalada, and Wilder Rodriguez , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Vector Structural Preservation Corp. (d/b/a Vector Structural Preservation), North Star Strategy, Inc. (d/b/a North Star Strategy), ("Defendant Corporations"), Bill Handakas,  Vassilios Handakas, and  Sergio Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Vector Structural Preservation Corp. (d/b/a Vector Structural Preservation), North Star Strategy, Inc. (d/b/a North Star Strategy), Bill Handakas, Vassilios Handakas, and Sergio Doe.

2.       Defendants own, operate, or control two construction corporations, located at 75 Harbor Road, Port Washington, New York 11050 under the name "Vector Structural Preservation" and at 238 W Jericho Turnpike, Huntington Station, New York 11746 under the name "North Star Strategy".

3.      Upon information and belief, individual Defendants Bill Handakas, Vassilios Handakas, and Sergio Doe, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the construction corporations as a joint or unified enterprise.

4.      Plaintiffs were employed as brick layers at the construction corporations located at 75 Harbor Road, Port Washington, New York 11050 and 238 W Jericho Turnpike, Huntington Station, New York 11746.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

8.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

10.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

11.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate two construction corporations located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

14.     Plaintiff Alejandro Manuel Zapata Osorio ("Plaintiff Zapata" or "Mr. Zapata") is an adult individual residing in Queens County, New York.

15.     Plaintiff Zapata was employed by Defendants at Vector Structural Preservation Corp. from approximately May 12, 2019 until on or about June 25, 2019.

16.     Plaintiff Arturo del Razo ("Plaintiff del Razo" or "Mr. del Razo") is an adult individual residing in Queens County, New York.

17.     Plaintiff del Razo was employed by Defendants at Vector Structural Preservation Corp. from approximately May 12, 2019 until on or about June 28, 2019.

18.     Plaintiff Braulio Rolando Cashabamba Chango ("Plaintiff Cashabamba" or "Mr. Cashabamba") is an adult individual residing in Kings County, New York.

19.     Plaintiff Cashabamba was employed by Defendants at Vector Structural Preservation Corp. from approximately September 2018 until on or about June 28, 2019.

20.     Plaintiff Byron Salvador Barrera Sanchez ("Plaintiff Barrera" or "Mr. Barrera") is an adult individual residing in Queens County, New York.

21.     Plaintiff Barrera was employed by Defendants at Vector Structural Preservation Corp. from approximately November 2018 until on or about May 2019.

22.     Plaintiff Carlos E. Sierra Rodriguez ("Plaintiff Carlos" or "Mr. Carlos") is an adult individual residing in Queens County, New York.

23.     Plaintiff Carlos was employed by Defendants at Vector Structural Preservation Corp. from approximately June 26, 2018 until on or about June 28, 2019.

24.     Plaintiff Edwin Fabricio Cashabamba Tubon ("Plaintiff Fabricio" or "Mr. Fabricio") is an adult individual residing in Queens County, New York.

25.     Plaintiff Fabricio was employed by Defendants at Vector Structural Preservation Corp. from approximately May 13, 2019 until on or about June 15, 2019.

26.     Plaintiff Jesus Sierra ("Plaintiff Jesus" or "Mr. Jesus") is an adult individual residing in Queens County, New York.

27.     Plaintiff Jesus was employed by Defendants at Vector Structural Preservation Corp. from approximately August 6, 2018 until on or about June 28, 2019.

28.     Plaintiff Juan Sierra ("Plaintiff Sierra" or "Mr. Sierra") is an adult individual residing in Queens County, New York.

29.     Plaintiff Sierra was employed by Defendants at Vector Structural Preservation Corp. from approximately August 2018 until on or about June 28, 2019.

30.     Plaintiff Ramon Rosales Galvez ("Plaintiff Rosales" or "Mr. Rosales") is an adult individual residing in Bronx County, New York.

31.     Plaintiff Rosales was employed by Defendants at Vector Structural Preservation Corp. from approximately July 2018 until on or about June 28, 2019.

32.     Plaintiff Raul Chavez Diaz ("Plaintiff Chavez" or "Mr. Chavez") is an adult individual residing in Queens County, New York.

33.     Plaintiff Chavez was employed by Defendants at Vector Structural Preservation Corp. from approximately March 2019 until on or about June 28, 2019.

34.     Plaintiff Segundo Leandro Alulema Guano ("Plaintiff Alulema" or "Mr. Alulema") is an adult individual residing in Queens County, New York.

35.     Plaintiff Alulema was employed by Defendants at Vector Structural Preservation Corp. from approximately January 28, 2019 until on or about June 21, 2019.

36.     Plaintiff Segundo Nicolas Siguencia Encalada ("Plaintiff Siguencia" or "Mr. Siguencia") is an adult individual residing in Queens County, New York.

37.     Plaintiff Siguencia was employed by Defendants at Vector Structural Preservation Corp. from approximately March 24, 2018 until on or about May 2019.

38.     Plaintiff Wilder Rodriguez ("Plaintiff Rodriguez" or "Mr. Rodriguez") is an adult individual residing in Kings County, New York.

39.     Plaintiff Rodriguez was employed by Defendants at Vector Structural Preservation Corp. from approximately May 15, 2019 until on or about June 28, 2019.

*Defendants*

40.     At all relevant times, Defendants owned, operated, or controlled two construction corporations, located at 75 Harbor Road, Port Washington, New York 11050 under the name "Vector Structural Preservation" and at 238 W Jericho Turnpike, Huntington Station, New York 11746 under the name "North Star Strategy".

41.     Upon information and belief, Vector Structural Preservation Corp. (d/b/a Vector Structural Preservation) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 75 Harbor Road, Port Washington, New York 11050.

42.     Upon information and belief, North Star Strategy, Inc. (d/b/a North Star Strategy) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 238 W Jericho Turnpike, Huntington Station, New York 11746.

43.     Defendant Bill Handakas is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Bill Handakas is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Bill Handakas possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

44.     Defendant Vassilios Handakas is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Vassilios Handakas is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Vassilios Handakas possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including

Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

45.     Defendant Sergio Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Sergio Doe is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Sergio Doe possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

46.     Defendants operate two construction corporations located in Nassau County with construction projects in the city of Yonkers in Westchester County.

47.     Individual Defendants, Bill Handakas, Vassilios Handakas, and Sergio Doe, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

48.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

49.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

50.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

51.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

52.     Upon information and belief, Individual Defendants Bill Handakas, Vassilios Handakas, and Sergio Doe operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a)   failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)   defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)   transferring assets and debts freely as between all Defendants,

d)   operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e)   operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f)   intermingling assets and debts of their own with Defendant Corporations,

g)   diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h)   Other actions evincing a failure to adhere to the corporate form.

53.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

54.    In each year from 2018 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

55.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the construction corporations on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

56.    Plaintiffs are former employees of Defendants who were employed as brick layers.

57.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Alejandro Manuel Zapata Osorio*

58.    Plaintiff Zapata was employed by Defendants from approximately May 12, 2019 until on or about June 25, 2019.

59.    Defendants employed Plaintiff Zapata as a brick layer.

60.    Plaintiff Zapata regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

61.    Plaintiff Zapata's work duties required neither discretion nor independent judgment.

62.    Throughout his employment with Defendants, Plaintiff Zapata regularly worked in excess of 40 hours per week.

63.    For approximately two weeks in May 2019 until on or about June 9, 2019, Plaintiff Zapata worked from approximately 7:00 a.m. until on or about 3:30 p.m. Mondays through Saturdays (typically 48 hours per week).

64.    From approximately June 10, 2019 until on or about June 25, 2019, Plaintiff Zapata worked from approximately 7:00 a.m. until on or about 6:30 p.m., Mondays through Fridays (typically 55 hours per week).

65.    From approximately May 12, 2019 until on or about June 16, 2019, Defendants paid Plaintiff Zapata his wages by personal check.

66.    From approximately June 16, 2019 until on or about June 25, 2019, Defendants paid Plaintiff Zapata his wages in cash.

67.    From approximately May 12, 2019 until on or about June 25, 2019, Defendants paid Plaintiff Zapata $31.50 per hour.

68.    For approximately three days in May 2019, approximately $690, and for approximately his last two weeks of employment, Defendants did not pay Plaintiff Zapata any wages for his work.

69.    Throughout his employment, Plaintiff Zapata was given an unpaid thirty-minute meal period and a paid fifteen-minute coffee break.

70.    Plaintiff Zapata's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

71.    For example, Defendants required Plaintiff Zapata to work an additional three hours past his scheduled departure time five days a week, and did not pay him for the additional time he worked.

72.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Zapata regarding overtime and wages under the FLSA and NYLL.

73.     Defendants did not provide Plaintiff Zapata an accurate statement of wages, as required by NYLL 195(3).

74.     Defendants did not give any notice to Plaintiff Zapata, in English and in Spanish (Plaintiff Zapata's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

75.     Defendants required Plaintiff Zapata to purchase "tools of the trade" with his own funds—including a hammer, measuring tape, a pair of work boots, a balance ruler, and a safety harness.

*Plaintiff Arturo del Razo*

76.     Plaintiff del Razo was employed by Defendants from approximately May 2019 until on or about June 28, 2019.

77.     Defendants employed Plaintiff del Razo as a brick layer.

78.     Plaintiff del Razo regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

79.     Plaintiff del Razo's work duties required neither discretion nor independent judgment.

80.     Throughout his employment with Defendants, Plaintiff del Razo regularly worked in excess of 40 hours per week.

81.     From approximately May 12, 2019 until on or about June 23, 2019, Plaintiff del Razo worked from approximately 7:00 a.m. until on or about 6:30 p.m., Mondays through Fridays (typically 55 hours per week).

82.    From approximately June 24, 2019 until on or about June 28, 2019, Plaintiff del Razo worked from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays (typically 42.5 hours per week).

83.    Throughout his employment, Defendants paid Plaintiff del Razo his wages in cash.

84.    From approximately May 12, 2019 until on or about May 16, 2019, Defendants paid Plaintiff del Razo $36.00 per hour.

85.    From approximately May 17, 2019 until on or about June 24, 2019, Defendants paid Plaintiff del Razo $29.00 per hour.

86.    For approximately two weeks and three days in June 2019, Defendants did not pay Plaintiff del Razo any wages for his work.

87.    Throughout his employment, Plaintiff del Razo was given an unpaid thirty-minute meal period and a paid fifteen-minute coffee break.

88.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff del Razo regarding overtime and wages under the FLSA and NYLL.

89.    Defendants did not provide Plaintiff del Razo an accurate statement of wages, as required by NYLL 195(3).

90.    Defendants did not give any notice to Plaintiff del Razo, in English and in Spanish (Plaintiff del Razo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

91.    Defendants required Plaintiff del Razo to purchase "tools of the trade" with his own funds—including a level, one hammer, measuring tape, a rope line, a harness, makers, and joiners.

*Plaintiff Braulio Rolando Cashabamba Chango*

92.     Plaintiff Cashabamba was employed by Defendants from approximately September 2018 until on or about June 28, 2019.

93.     Defendants employed Plaintiff Cashabamba as a brick layer.

94.     Plaintiff Cashabamba regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

95.     Plaintiff Cashabamba's work duties required neither discretion nor independent judgment.

96.     Throughout his employment with Defendants, Plaintiff Cashabamba regularly worked in excess of 40 hours per week.

97.     From approximately September 2018 until on or about March 2019, Plaintiff Cashabamba worked from approximately 7:00 a.m. until on or about 3:30 p.m. Mondays through Saturdays once a month (typically 48 hours per week).

98.     From approximately April 2019 until on or about June 28, 2019, Plaintiff Cashabamba worked from approximately 7:00 a.m. until on or about 6:30 p.m., Mondays through Saturdays (typically 66 hours per week).

99.     From approximately September 2018 until on or about January 2019, Defendants paid Plaintiff Cashabamba his wages in cash.

100.     From approximately February 2019 until on or about June 14, 2019, Defendants paid Plaintiff Cashabamba his wages by personal check.

101.     From approximately June 17, 2019 until on or about June 28, 2019, Defendants paid Plaintiff Cashabamba his wages in cash.

102.     From approximately September 2018 until on or about June 28, 2019, Defendants paid Plaintiff Cashabamba $33.00 per hour.

103.    From approximately June 10, 2019 until on or about June 28, 2019, Defendants did not pay Plaintiff Cashabamba any wages for his work.

104.    Throughout his employment, Plaintiff Cashabamba was given an unpaid thirty-minute meal period and a paid fifteen-minute coffee break.

105.    Plaintiff Cashabamba was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

106.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cashabamba regarding overtime and wages under the FLSA and NYLL.

107.    Defendants did not provide Plaintiff Cashabamba an accurate statement of wages, as required by NYLL 195(3).

108.    Defendants did not give any notice to Plaintiff Cashabamba, in English and in Spanish (Plaintiff Cashabamba's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

109.    Defendants required Plaintiff Cashabamba to purchase "tools of the trade" with his own funds—including gloves, safety glasses, and a drill.

*Plaintiff Byron Salvador Barrera Sanchez*

110.    Plaintiff Barrera was employed by Defendants from approximately November 2018 until on or about May 2019.

111.    Defendants employed Plaintiff Barrera as a brick layer.

112.    Plaintiff Barrera regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

113.    Plaintiff Barrera's work duties required neither discretion nor independent judgment.

114.    Throughout his employment with Defendants, Plaintiff Barrera regularly worked in excess of 40 hours per week.

115.    From approximately November 2018 until on or about May 2019, Plaintiff Barrera worked from approximately 7:00 a.m. until on or about 3:30 p.m., six days a week (typically 48 hours per week).

116.    From approximately November 2018 until on or about February 2019, Defendants paid Plaintiff Barrera his wages in cash.

117.    From approximately March 2019 until on or about May 2019, Defendants paid Plaintiff Barrera his wages by personal check.

118.    From approximately November 2018 until on or about May 2019, Defendants paid Plaintiff Barrera $35.00 per hour.

119.    For approximately one week of work in June 2019, Defendants did not pay Plaintiff Barrera any wages for his work.

120.    Throughout his employment, Plaintiff Barrera was given an unpaid thirty-minute meal period and a paid fifteen-minute coffee break.

121.    Plaintiff Barrera was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

122.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Barrera regarding overtime and wages under the FLSA and NYLL.

123.    Defendants did not provide Plaintiff Barrera an accurate statement of wages, as required by NYLL 195(3).

124.    Defendants did not give any notice to Plaintiff Barrera, in English and in Spanish (Plaintiff Barrera's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

125.    Defendants required Plaintiff Barrera to purchase "tools of the trade" with his own funds—including drills and construction lasers.

*Plaintiff Carlos E. Sierra Rodriguez*

126.    Plaintiff Carlos was employed by Defendants from approximately June 26, 2018 until on or about June 28, 2019.

127.    Defendants employed Plaintiff Carlos as a brick layer.

128.    Plaintiff Carlos regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

129.    Plaintiff Carlos' work duties required neither discretion nor independent judgment.

130.    Throughout his employment with Defendants, Plaintiff Carlos regularly worked in excess of 40 hours per week.

131.    From approximately January 28, 2019 until on or about February 1, 2019, Plaintiff Carlos worked from approximately 7:00 a.m. until on or about 3:30 p.m. Mondays, Tuesdays, Wednesdays, and Fridays and from approximately 7:00 a.m. until on or about 2:00 a.m. on Thursdays (typically 50.5 hours per week).

132.    In fact, Defendants required Plaintiff Carlos to work a night shift on Wednesday but didn't compensate him in any way for the additional night shift hours he worked; specifically, they required him to continue working from approximately 7:30 p.m. until on or about 2:00 a.m. without any additional compensation.

133.    From approximately June 3, 2019 until on or about June 23, 2019, Plaintiff Carlos worked from approximately 7:00 a.m. until on or about 6:30 p.m., Mondays through Fridays (typically 57.5 hours per week).

134.    From approximately June 24, 2019 until on or about June 28, 2019, Plaintiff Carlos worked from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays (typically 42.5 hours per week).

135.    From approximately June 26, 2018 until on or about December 2018, Defendants paid Plaintiff Carlos his wages in cash.

136.    From approximately January 2019 until on or about June 14, 2019, Defendants paid Plaintiff Carlos his wages by personal check.

137.    From approximately June 15, 2019 until on or about June 28, 2019, Defendants paid Plaintiff Carlos his wages in cash.

138.    From approximately June 26, 2018 until on or about December 2018, Defendants paid Plaintiff Carlos $32.00 per hour.

139.    From approximately January 2019 until on or about June 28, 2019, Defendants paid Plaintiff Carlos $27.00 per hour.

140.    For approximately his last two weeks and four days, Defendants did not pay Plaintiff Carlos any wages for his work.

141.    Throughout his employment, Plaintiff Carlos was given an unpaid thirty-minute meal period and a paid fifteen-minute coffee break.

142.    Plaintiff Carlos' pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

143.    For example, Defendants required Plaintiff Carlos to work an additional three hours past his scheduled departure time five days a week, and did not pay him for the additional time he worked.

144.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Carlos regarding overtime and wages under the FLSA and NYLL.

145.    Defendants did not provide Plaintiff Carlos an accurate statement of wages, as required by NYLL 195(3).

146.    Defendants did not give any notice to Plaintiff Carlos, in English and in Spanish (Plaintiff Carlos' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

147.    Defendants required Plaintiff Carlos to purchase "tools of the trade" with his own funds—including a hammer, measuring tape, a safety harness, a brick level tool, a pair of work boots, work clothes, safety equipment, five packs of gloves, and a drill.

*Plaintiff Edwin Fabricio Cashabamba Tubon*

148.    Plaintiff Fabricio was employed by Defendants from approximately May 13, 2019 until on or about June 15, 2019.

149.    Defendants employed Plaintiff Fabricio as a brick layer.

150.    Plaintiff Fabricio regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

151.    Plaintiff Fabricio's work duties required neither discretion nor independent judgment.

152.    Throughout his employment with Defendants, Plaintiff Fabricio regularly worked in excess of 40 hours per week.

153.    From approximately May 20, 2019 until on or about May 31, 2019, Plaintiff Fabricio worked from approximately 7:00 a.m. until on or about 6:30 p.m., Mondays through Fridays (typically 55 hours per week).

154.    From approximately June 3, 2019 until on or about June 15, 2019, Plaintiff Fabricio worked from approximately 7:00 a.m. until on or about 6:30 p.m., Mondays through Fridays and from approximately 7:00 a.m. until on or about 3:30 p.m., on Saturdays (typically 63 hours per week).

155.    Throughout his employment, Defendants paid Plaintiff Fabricio his wages by personal check.

156.    From approximately May 13, 2019 until on or about June 15, 2019, Defendants paid Plaintiff Fabricio $30.00 per hour.

157.    For approximately one week, Defendants did not pay Plaintiff Fabricio any wages for his work.

158.    Throughout his employment, Plaintiff Fabricio was given an unpaid thirty-minute meal period and a paid fifteen-minute coffee break.

159.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Fabricio regarding overtime and wages under the FLSA and NYLL.

160.    Defendants did not provide Plaintiff Fabricio an accurate statement of wages, as required by NYLL 195(3).

161.    Defendants did not give any notice to Plaintiff Fabricio, in English and in Spanish (Plaintiff Fabricio's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

162.    Defendants required Plaintiff Fabricio to purchase "tools of the trade" with his own funds—including one ruler, lines, and a measuring tool.

*Plaintiff Jesus Sierra*

163.    Plaintiff Jesus was employed by Defendants from approximately August 6, 2018 until on or about June 28, 2019.

164.    Defendants employed Plaintiff Jesus as a brick layer.

165.    Plaintiff Jesus regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

166.    Plaintiff Jesus' work duties required neither discretion nor independent judgment.

167.    Throughout his employment with Defendants, Plaintiff Jesus regularly worked in excess of 40 hours per week.

168.    From approximately August 2018 until on or about April 2019, Plaintiff Jesus worked from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Saturdays two weeks per month (typically 48 hours per week).

169.    For approximately two Saturdays per month from approximately May 1, 2019 until on or about May 31, 2019, Plaintiff Jesus worked from approximately 7:00 a.m. until on or about 6:30 p.m., Mondays through Fridays (typically 55 hours per week).

170.    From approximately June 26, 2019 until on or about June 28, 2019, Plaintiff Jesus worked from approximately 7:00 a.m. until on or about 3:30 p.m., Wednesday, Thursday, and Friday (typically 24 hours per week).

171.    From approximately August 2018 until on or about April 2019, Defendants paid Plaintiff Jesus his wages by personal check.

172.    From approximately May 2019 until on or about June 2019, Defendants paid Plaintiff Jesus his wages in cash.

173.    From approximately August 2018 until on or about June 28, 2019, Defendants paid Plaintiff Jesus $32.00 per hour.

174.    For approximately two weeks and four days, Defendants did not pay Plaintiff Jesus any wages for his work.

175.    Throughout his employment, Plaintiff Jesus was given an unpaid thirty-minute meal period and a paid fifteen-minute coffee break.

176.    Defendants took improper and illegal deductions from Plaintiff Jesus' wages; specifically, Defendants deducted $35.00 from Plaintiff Jesus' weekly wages for cashing his checks.

177.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Jesus regarding overtime and wages under the FLSA and NYLL.

178.    Defendants did not provide Plaintiff Jesus an accurate statement of wages, as required by NYLL 195(3).

179.    Defendants did not give any notice to Plaintiff Jesus, in English and in Spanish (Plaintiff Jesus' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

180.    Defendants required Plaintiff Jesus to purchase "tools of the trade" with his own funds—including one harness, a part of the harness, one lock, one drill, brick laying tool, and a level.

*Plaintiff Juan Sierra*

181.    Plaintiff Sierra was employed by Defendants from approximately August 2018 until on or about June 28, 2019.

182.    Defendants employed Plaintiff Sierra as a brick layer and a scaffolder.

183.    Plaintiff Sierra regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

184.    Plaintiff Sierra's work duties required neither discretion nor independent judgment.

185.    Throughout his employment with Defendants, Plaintiff Sierra regularly worked in excess of 40 hours per week.

186.    From approximately August 2018 until on or about May 20, 2019, Plaintiff Sierra worked from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays and on some occasions on Saturdays (typically 38.75 to 46.5 hours per week).

187.    From approximately May 20, 2018 until on or about June 28, 2019, Plaintiff Sierra worked from approximately 7:00 a.m. until on or about 6:30 p.m., Mondays through Fridays (typically 57.5 hours per week).

188.    Throughout his employment, Defendants paid Plaintiff Sierra his wages in cash.

189.    From approximately August 2018 until on or about June 28, 2019, Defendants paid Plaintiff Sierra $32.00 per hour.

190.    For approximately two weeks and three days, Defendants did not pay Plaintiff Sierra any wages for his work.

191.    Throughout his employment, Plaintiff Sierra was given an unpaid thirty-minute meal period and a paid fifteen-minute coffee break.

192.    Defendants took improper and illegal deductions from Plaintiff Sierra's wages; specifically, Defendants deducted 3% from Plaintiff Sierra's weekly wages for cashing his checks.

193.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Sierra regarding overtime and wages under the FLSA and NYLL.

194.    Defendants did not provide Plaintiff Sierra an accurate statement of wages, as required by NYLL 195(3).

195.    Defendants did not give any notice to Plaintiff Sierra, in English and in Spanish (Plaintiff Sierra's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

196.    Defendants required Plaintiff Sierra to purchase "tools of the trade" with his own funds—including a level, one hammer, measuring tape, a rope line, a harness, makers, and joiners.

*Plaintiff Ramon Rosales Galvez*

197.    Plaintiff Rosales was employed by Defendants from approximately July 2018 until on or about June 28, 2019.

198.    Defendants employed Plaintiff Rosales as a brick layer.

199.    Plaintiff Rosales regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

200.    Plaintiff Rosales' work duties required neither discretion nor independent judgment.

201.    Throughout his employment with Defendants, Plaintiff Rosales regularly worked in excess of 40 hours per week.

202.    From approximately July 2018 until on or about May 2019, Plaintiff Rosales worked from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Saturdays (typically 48 hours per week).

203.    From approximately June 1, 2019 until on or about June 14, 2019, Plaintiff Rosales worked from approximately 7:00 a.m. until on or about 6:30 p.m., Mondays through Fridays (typically 55 hours per week).

204.    From approximately June 15, 2019 until on or about June 28, 2019, Plaintiff Rosales worked from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Saturdays (typically 48 hours per week).

205.    Throughout his employment, Defendants paid Plaintiff Rosales his wages in a combination of check and cash.

206.    From approximately July 2018 until on or about June 28, 2019, Defendants paid Plaintiff Rosales $35.00 per hour.

207.    For approximately three weeks, Defendants did not pay Plaintiff Rosales any wages for his work.

208.    Throughout his employment, Plaintiff Rosales was given an unpaid thirty-minute meal period and a paid fifteen-minute coffee break.

209.    Defendants took improper and illegal deductions from Plaintiff Rosales' wages; specifically, Defendants deducted 3% from Plaintiff Rosales' weekly wages for cashing his checks.

210.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rosales regarding overtime and wages under the FLSA and NYLL.

211.    Defendants did not provide Plaintiff Rosales an accurate statement of wages, as required by NYLL 195(3).

212.    Defendants did not give any notice to Plaintiff Rosales, in English and in Spanish (Plaintiff Rosales' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

213.    Defendants required Plaintiff Rosales to purchase "tools of the trade" with his own funds—including a pair of gloves, one drill, levels, one harness, a pack of pencils, a towel, and a measuring tape.

*Plaintiff Raul Chavez Diaz*

214.    Plaintiff Chavez was employed by Defendants from approximately March 2019 until on or about June 28, 2019.

215.    Defendants employed Plaintiff Chavez as a brick layer.

216.    Plaintiff Chavez regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

217.    Plaintiff Chavez's work duties required neither discretion nor independent judgment.

218.    Throughout his employment with Defendants, Plaintiff Chavez regularly worked in excess of 40 hours per week.

219.    From approximately March 2019 until on or about June 6, 2019, Plaintiff Chavez worked from approximately 7:00 a.m. until on or about 3:30 p.m., five to six days a week (typically 40 to 48 hours per week).

220.    From approximately June 7, 2019 until on or about June 28, 2019, Plaintiff Chavez worked from approximately 7:00 a.m. until on or about 6:30 p.m., Mondays through Fridays and from approximately 7:00 a.m. until on or about 3:30 p.m., on Saturdays (typically 63 hours per week).

221.    From approximately March 2019 until on or about June 28, 2019, Defendants paid Plaintiff Chavez his wages by personal check.

222.    From approximately March 2019 until on or about June 28, 2019, Defendants paid Plaintiff Chavez $28.00 per hour.

223.    For approximately one week and three days, Defendants did not pay Plaintiff Chavez any wages for his work.

224. Throughout his employment, Plaintiff Chavez was given an unpaid thirty-minute meal period and a paid fifteen-minute coffee break.

225. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Chavez regarding overtime and wages under the FLSA and NYLL.

226. Defendants did not provide Plaintiff Chavez an accurate statement of wages, as required by NYLL 195(3).

227. Defendants did not give any notice to Plaintiff Chavez, in English and in Spanish (Plaintiff Chavez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

228. Defendants required Plaintiff Chavez to purchase "tools of the trade" with his own funds—including one hammer.

*Plaintiff Segundo Leandro Alulema Guano*

229. Plaintiff Alulema was employed by Defendants from approximately January 28, 2019 until on or about June 21, 2019.

230. Defendants employed Plaintiff Alulema as a brick layer.

231. Plaintiff Alulema regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

232. Plaintiff Alulema's work duties required neither discretion nor independent judgment.

233. Throughout his employment with Defendants, Plaintiff Alulema regularly worked in excess of 40 hours per week.

234.    From approximately January 28, 2019 until on or about May 2019, Plaintiff Alulema worked from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Saturdays two weeks a month (typically 48 hours per week).

235.    From approximately June 3, 2019 until on or about June 21, 2019, Plaintiff Alulema worked from approximately 7:00 a.m. until on or about 6:30 p.m., Mondays through Fridays (typically 55 hours per week).

236.    From approximately January 28, 2019 until on or about June 21, 2019, Defendants paid Plaintiff Alulema his wages by personal check.

237.    From approximately January 28, 2019 until on or about June 21, 2019, Defendants paid Plaintiff Alulema $31.25 per hour.

238.    For approximately one week and one day, Defendants did not pay Plaintiff Alulema any wages for his work.

239.    Throughout his employment, Plaintiff Alulema was given an unpaid thirty-minute meal period and a paid fifteen-minute coffee break.

240.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Alulema regarding overtime and wages under the FLSA and NYLL.

241.    Defendants did not provide Plaintiff Alulema an accurate statement of wages, as required by NYLL 195(3).

242.    Defendants did not give any notice to Plaintiff Alulema, in English and in Spanish (Plaintiff Alulema's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Segundo Nicolas Siguencia Encalada*

243.    Plaintiff Siguencia was employed by Defendants from approximately March 24, 2018 until on or about May 2019.

244.    Defendants employed Plaintiff Siguencia as a brick layer.

245.    Plaintiff Siguencia regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

246.    Plaintiff Siguencia's work duties required neither discretion nor independent judgment.

247.    Throughout his employment with Defendants, Plaintiff Siguencia regularly worked in excess of 40 hours per week.

248.    From approximately March 24, 2018 until on or about March 2019, Plaintiff Siguencia worked from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Saturdays two weeks a month (typically 48 hours per week).

249.    From approximately March 2019 until on or about May 2019, Plaintiff Siguencia worked from approximately 7:00 a.m. until on or about 6:00 p.m., Mondays through Fridays two weeks a month (typically 52.5 hours per week).

250.    From approximately March 2019 until on or about May 2019, Plaintiff Siguencia worked from approximately 7:00 a.m. until on or about 6:00 p.m., Mondays through Fridays and from approximately 7:00 a.m. until on or about 3:30 p.m., on Saturdays (typically 60.5 hours per week).

251.    From approximately March 24, 2018 until on or about May 2018, Defendants paid Plaintiff Siguencia his wages by personal check.

252.    From approximately May 2018 until on or about November 2018, Defendants paid Plaintiff Siguencia his wages in cash.

253.    From approximately November 2018 until on or about May 2019, Defendants paid Plaintiff Siguencia his wages by personal check.

254.    From approximately March 24, 2018 until on or about May 2019, Defendants paid Plaintiff Siguencia $35.00 per hour.

255.    For approximately three weeks, Defendants did not pay Plaintiff Siguencia any wages for his work.

256.    Throughout his employment, Plaintiff Siguencia was given an unpaid thirty-minute meal period and a paid fifteen-minute coffee break.

257.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Siguencia regarding overtime and wages under the FLSA and NYLL.

258.    Defendants did not provide Plaintiff Siguencia an accurate statement of wages, as required by NYLL 195(3).

259.    Defendants did not give any notice to Plaintiff Siguencia, in English and in Spanish (Plaintiff Siguencia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Wilder Rodriguez*

260.    Plaintiff Rodriguez was employed by Defendants from approximately May 15, 2019 until on or about June 28, 2019.

261.    Defendants employed Plaintiff Rodriguez as a brick layer.

262.    Plaintiff Rodriguez regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

263.    Plaintiff Rodriguez's work duties required neither discretion nor independent judgment.

264.    Throughout his employment with Defendants, Plaintiff Rodriguez regularly worked in excess of 40 hours per week.

265.    For approximately one week in the time period from approximately May 15, 2019 until on or about June 28, 2019, Plaintiff Rodriguez worked from approximately 7:00 a.m. until on or about 3:30 p.m., Monday through Friday (typically 40 hours per week).

266.    For approximately one week in the time period from approximately May 15, 2019 until on or about June 28, 2019, Plaintiff Rodriguez worked from approximately 7:00 a.m. until on or about 6:00 p.m., Mondays through Fridays (typically 52.5 hours per week).

267.    Throughout his employment, Defendants paid Plaintiff Rodriguez his wages in a combination of check and cash.

268.    From approximately May 2019 until on or about June 28, 2019, Defendants paid Plaintiff Rodriguez $35.00 per hour.

269.    For approximately two weeks, Defendants did not pay Plaintiff Rodriguez any wages for his work.

270.    Throughout his employment, Plaintiff Rodriguez was given an unpaid thirty-minute meal period and a paid fifteen-minute coffee break.

271.    Defendants took improper and illegal deductions from Plaintiff Rodriguez's wages; specifically, Defendants deducted 2% from Plaintiff Rodriguez's weekly wages for cashing his checks.

272.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rodriguez regarding overtime and wages under the FLSA and NYLL.

273.    Defendants did not provide Plaintiff Rodriguez an accurate statement of wages, as required by NYLL 195(3).

274.    Defendants did not give any notice to Plaintiff Rodriguez, in English and in Spanish (Plaintiff Rodriguez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

275.    Defendants required Plaintiff Rodriguez to purchase "tools of the trade" with his own funds—including levels, one shovel, one hammer, one line, rulers, one harness, one lock, one helmet, and a pair of boots.

*Defendants' General Employment Practices*

276.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

277.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

278.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

279.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

280.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

281.    Defendants paid Plaintiffs their wages in cash and a combination of personal check and cash.

282.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

283.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

284.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

285.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

286.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

287.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day,

week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

288.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

289.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

290.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

291.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

292.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and

fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

293.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

294.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

295.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

296.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

297.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

298.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

299.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

300.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

301.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

302.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

303.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

304.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

305.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

306.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

307.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

308.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

309.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

310.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

311.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

312.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

313.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

314.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

315.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular

hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

316.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

317.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

318.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

319.    Plaintiffs were damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

## OF THE NEW YORK LABOR LAW

320.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

321.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

322.    Defendants made unlawful deductions from Plaintiffs' wages; specifically, Defendants deducted 3% from Plaintiffs' weekly wages for cashing in their checks.

323.    The deductions made from Plaintiffs' wages were not authorized or required by law.

324.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting

New York State regulations.

325.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

326.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

327.    Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

328.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)      Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)      Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)      Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(k)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)      Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(m)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(n)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

August 2, 2019

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]

60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 1, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Alejandro Manuel Zapata  Osorio

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     1 de julio 2019

---

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 1, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                  Arturo Del Razo

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                   1 de julio 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 1, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Braulio Rolando  Cashabamba  Chango

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     1 de julio 2019

# Michael Faillace & Associates, P.C.
## Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

————

Faillace@employmentcompliance.com

July 17, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Byron Salvador Barrera  Sanchez

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:                      _Byron S. Barrera S._

Date / Fecha:                           17 de julio 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———————

Faillace@employmentcompliance.com

July 1, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Carlos E.  Sierra Rodriguez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              1 de julio 2019

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———————

Faillace@employmentcompliance.com

July 1, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:          Edwin Fabricio Cashabamba Tubon

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:         1 de Julio 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 1, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Jesus Sierra

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           1 de Julio de 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———————

Faillace@employmentcompliance.com

July 1, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Juan Sierra

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:               1 de julio 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 1, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Ramon Rosales  Galvez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                 Ramon Rosales

Date / Fecha:                      1 de julio 2019

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———

Faillace@employmentcompliance.com

July 1, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                 Raul  Chavez Diaz

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                  1 de julio 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 1, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Segundo Leandro Alulema Guano

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     1 de Julio

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
## Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 19, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Segundo Nicolas Siguencia Encalada

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       19 de Julio 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

## Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 1, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Wilder  Rodriguez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      1 de julio 2019

*Certified as a minority-owned business in the State of New York*